UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID D. SOLOMON, | ) | CIVIL ACTION NO. 1:21-CV-816 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | (ARBUCKLE, M.J.) |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| *Acting Commissioner of Social Security* | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

**I.    INTRODUCTION**

Plaintiff, David D. Solomon ("Solomon"), seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits under Title II of the Social Security Act. The Court has jurisdiction under 42 U.S.C. § 405(g). The parties have consented to have a Magistrate Judge preside over all proceedings in this case. (Doc. 9).

For the reasons set forth below, the Commissioner's final decision will be vacated, and this case will be remanded for further proceedings.

## II.   BACKGROUND AND PROCEDURAL HISTORY

On June 13, 2019, Solomon protectively filed[1] an application for disability insurance benefits, alleging that he has been disabled since March 1, 2014. (Admin. Tr. 15; Doc. 15-2, p. 16). After the Commissioner denied his claims at the initial and reconsideration levels of administrative review, Solomon requested an administrative hearing. *Id*. On June 16, 2020, Solomon, represented by counsel, testified at a telephone hearing before Administrative Law Judge ("ALJ") Edward L. Brady. (Admin. Tr. 15, 29; Doc. 15-2, pp. 16, 30).

The ALJ determined that Solomon had not been disabled from March 1, 2014 (the alleged onset date), through December 31, 2019 (the date last insured). *Id*. And so, he denied Solomon benefits. *Id*. Solomon appealed the ALJ's decision to the Appeals Council, which denied his request for review on March 1, 2021. (Admin. Tr. 1–3; Doc. 15-2, p. 2-4). This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

On May 5, 2021, Solomon, through counsel, began this action by filing a complaint requesting review of the Commissioner's decision. (Doc. 1).

---

[1] "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017). "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id*.

The Commissioner filed an answer and a certified transcript of the administrative proceedings. (Docs. 14, 15). The parties filed their briefs. (Docs. 20, 21, 22). This matter is ripe for decision. Before reviewing the merits of this case it is helpful to review the applicable legal standards governing this appeal.

### III. LEGAL STANDARDS

#### A. SUBSTANTIAL EVIDENCE REVIEW—THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner."[2] But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings.[3] "[T]he threshold for such evidentiary sufficiency is not high."[4] Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[5]

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla."[6] A single piece of evidence is not substantial evidence if the

---

[2] *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

[3] *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).

[4] *Biestek*, 139 S. Ct. at 1154.

[5] *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

[6] *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).

ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.[7] But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence."[8] "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole."[9]

The question before this court, therefore, is not whether Solomon was disabled, but whether substantial evidence supports the Commissioner's finding that she was not disabled and whether the Commissioner correctly applied the relevant law.

### B.   INITIAL BURDENS OF PROOF, PERSUASION, AND ARTICULATION FOR THE ALJ

To receive benefits under Title II of the Social Security Act, a claimant generally must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

---

[7] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

[8] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[9] *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

continuous period of not less than 12 months."[10] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy.[11] A claimant must also show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.[12]

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled.[13] Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other

---

[10] 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).

[11] 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

[12] 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a). "Disability insurance benefits are paid to an individual if that individual is disabled and 'insured,' that is, the individual has worked long enough and paid social security taxes." *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *1 n.5 (M.D. Pa. Mar. 14, 2014) (citing 42 U.S.C. §§ 415(a), 416(i)(1)). "The last date that an individual meets the requirements of being insured is commonly referred to as the 'date last insured.'" *Id*. (citing 42 U.S.C. § 416(i)(2)). Here, the ALJ determined that Solomon met the insured-status requirements through December 31, 2019. Admin. Tr. at 17, 29.

[13] 20 C.F.R. § 404.1520(a).

work, considering his or her age, education, work experience, and residual functional capacity ("RFC").[14]

The ALJ must also assess a claimant's RFC between steps three and four.[15] The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'"[16] In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis.[17]

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process.[18] But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with [his] medical impairments, age, education, past work experience, and residual functional capacity."[19]

---

[14] 20 C.F.R. § 404.1520(a)(4)(i)–(v).

[15] *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).

[16] *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 404.1545(a)(1).

[17] 20 C.F.R. § 404.1545(a)(2).

[18] *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010).

[19] *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests.[20] "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding."[21] The "ALJ may not reject pertinent or probative evidence without explanation."[22] Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'"[23]

### C.  GUIDELINES FOR THE ALJ'S EVALUATION OF MEDICAL OPINION EVIDENCE

Because some of Solomon's claims concern the ALJ's handling of opinion evidence, we start with a brief overview of the regulations regarding opinion evidence. The regulations in this regard are different for claims filed before March 27, 2017, and for claims, like Solomon's, filed on or after March 27, 2017. Specifically, the regulations applicable to claims filed on or after March 27, 2017, ("the new regulations") changed the way the Commissioner considers medical opinion evidence and eliminated the provision in the regulations applicable to claims

---

[20] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

[21] *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999).

[22] *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).

[23]  *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

filed before March 27, 2017, ("the old regulations") that granted special deference to opinions of treating physicians.

The new regulations have been described as a "paradigm shift" in the way medical opinions are evaluated.[24] Under the old regulations, "ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy."[25] But under the new regulations, "[t]he range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis."[26]

Under the old regulations, the ALJ assigns the weight he or she gives to a medical opinion.[27] And if "a treating source's medical opinions on the issue(s) of the nature and severity of [a claimant's] impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Commissioner "will give it controlling weight."[28] Under the old regulations, where the

---

[24] *Densberger v. Saul*, No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021).

[25] *Id.*

[26] *Id.*

[27] 20 C.F.R. § 404.1527(c).

[28] 20 C.F.R. § 404.1527(c)(2).

Commissioner does not give a treating source's medical opinion controlling weight, it analyzes the opinion in accordance with a number of factors: the "[l]ength of the treatment relationship and the frequency of examination," the "[n]ature and extent of the treatment relationship," the "[s]upportability" of the opinion, the "[c]onsistency" of the opinion with the record as whole, the "[s]pecialization" of the treating source, and any other relevant factors.[29]

Under the new regulations, however, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."[30] Rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions.[31] And the Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other

---

[29] *Id.* at § 404.1527(c)(2)–(c)(6).
[30] 20 C.F.R. § 404.1520c(a).
[31] 20 C.F.R. § 404.1520c(b).

factors that tend to support or contradict the opinion.[32] The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion.[33] As to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."[34] And as to consistency, those regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."[35]

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion.[36] Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors.[37] But if there are

---

[32] 20 C.F.R. § 404.1520c(c).
[33] 20 C.F.R. § 404.1520c(b)(2).
[34] 20 C.F.R. § 404.1520c(c)(1).
[35] 20 C.F.R. § 404.1520c(c)(2).
[36] 20 C.F.R. § 404.1520c(b)(2).
[37] *Id.*

two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors.[38]

With these legal standards in mind we turn to the merits of this appeal.

## IV. DISCUSSION

Solomon raises the following issue in his statement of errors:

1. The ALJ's RFC determination is unsupported by substantial evidence and the product of legal error because he failed to properly evaluate the opinion of treating physician Matthew Berger, M.D.

(Doc. 20, p. 4).

We will begin our analysis by summarizing the ALJ's findings, then we will address Solomon's argument.

### A. THE ALJ'S DECISION DENYING SOLOMON'S APPLICATION FOR BENEFITS

On July 1, 2020, the ALJ denied Solomon's claims for benefits. (Admin. Tr. 15-29; Doc. 15-2, pp. 16-30). At step one of the sequential-evaluation process, the ALJ found that Solomon had not engaged in substantial gainful activity between March 1, 2014, the alleged onset date, and December 31, 2019, his last date insured. (Admin. Tr. 17; Doc. 15-2, p. 18).

At step two of the sequential-evaluation process, the ALJ found that Solomon had the following severe impairments: major depressive disorder, migraine

---

[38] 20 C.F.R. § 404.1520c(b)(3).

headaches, diabetes mellitus, chronic kidney disease, motor polyneuropathy, and coronary artery disease. (Admin. Tr. 17; Doc. 15-2, p. 18). The ALJ also found that Solomon had the following non-severe impairments: hypertension, obstructive sleep apnea, hyperparathyroidism, chronic kidney disease, hyperkalemia, and degenerative disc disease of the spine. (Admin. Tr. 18; Doc. 15-2, p. 19).

At step three of the sequential-evaluation process, the ALJ found that Solomon did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. More specifically, the ALJ discussed Listings 1.02, 1.04, 4.02, 4.04, 11.14, 12.02, 12.04, 12.06, and 12.15, and he determined that Solomon did not meet any of those listings. (Admin. Tr. 18-22; Doc. 15-2, pp. 19-23). In connection with her discussion of the mental health listings, the ALJ concluded that Solomon had moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting and managing himself. (Admin. Tr. 21; Doc. 15-2, p. 22).

The ALJ then determined that Solomon has the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c) with some non-exertional limitations. (Admin. Tr. 22; Doc. 15-2, p. 23). The ALJ also determined that

> [Solomon] must avoid concentrated exposure to unprotected heights. He can never climb ladders ropes, or scaffolds. [Solomon] is able to carry out detailed but uninvolved instructions to perform simple, routine, and repetitive tasks and involving only simple work-related

>decisions, with few, if any, workplace changes. He can tolerate occasional interaction with coworkers and supervisors and no interaction with the public. He can tolerate a low level of work pressure defined as work not requiring multitasking, significant independent judgment, sharing of job tasks, or contact with the public.

*Id*. In making this RFC assessment, the ALJ reviewed Solomon's symptoms and the medical opinion evidence. *Id*.

At step four of the sequential-evaluation process, the ALJ found that Solomon is unable to do his past relevant work as a dispatcher (a "skilled" sedentary position) because Solomon is limited to "unskilled" work. (Admin. Tr. 27; Doc. 15-2, p. 28).[39]

At step five of the sequential-evaluation process, considering Solomon's age, education, work experience, and RFC, as well as the testimony of a vocational expert, the ALJ found that there were jobs that exist in significant numbers in the national economy that Solomon could perform, including laundry laborer (DOT# 361.687-018); hand packer (DOT# 920.587-018); hospital cleaner (DOT# 323.687-010), each with at least 303,000 positions in the national economy. (Admin. Tr. 28; Doc. 15-2, p. 29).

In sum, the ALJ concluded that Solomon was not disabled from March 1, 2014, through the date last insured on December 31, 2019. (Admin. Tr. 27-28; Doc.

---

[39] *See* 20 C.F.R. § 404.1568 (defining "skilled" and "unskilled" work).

15-2, p. 28-29). Thus, the ALJ denied Solomon's claims for disability insurance benefits and supplemental security income. *Id*.

B.     THE MEDICAL OPINIONS

Three medical sources issued statements about Solomon's mental health limitations: state agency consultant Monica Yeater, Psy.D.; state agency consultant Dennis C. Gold, Ph.D.; and treating psychiatrist Matthew Berger, M.D.

Dr. Yeater issued a prior administrative medical finding at the initial level of administrative review. In doing so, she did both a psychiatric review technique ("PRT") and mental RFC assessment. Dr. Yeater assessed that Solomon could understand, retain and follow simple instructions despite the limitations resulting from his mental impairments. (Admin. Tr. 72-76; Doc. 15-3, pp. 8-12). In his decision the ALJ found the PRT assessment "mostly persuasive," and credited that assessment except for the "mild limitations in understanding, remembering or applying information. The ALJ, however, did not discuss *why* he found the PRT assessment persuasive. Furthermore, the ALJ did not address or explain whether he found Dr. Yeater's mental RFC assessment persuasive. (Admin. Tr. 25; Doc. 15-2, p. 26).

Dr. Gold issued a prior administrative medical finding at the reconsideration level of administrative review. In doing so, he issued a mental RFC assessment. In that assessment, he found that Solomon would have limitations due to his mental

impairments, but that Solomon would be able to remember and carry out simple, routine instructions. (Admin. Tr. 86-88; Doc. 15-3, pp. 22-24). The ALJ found Dr. Gold's assessment "persuasive," and noted that the RFC is consistent with it, but did not explain *why* he found the opinion "persuasive." (Admin. Tr. 25-36; Doc. 15-2, pp. 26-27).

The ALJ also considered Dr. Berger's opinion, but did not expressly articulate its persuasiveness. Specifically, the ALJ wrote:

> There is an unsigned mental capacity assessment purportedly from Dr. Berger where it was noted that the claimant would have marked limitations in completing tasks in a timely manner. He would have marked limitations avoiding distractions while working and marked limitation in his ability to sustain an ordinary routine and regular attendance at work with marked limitations in the ability to handle conflicts with others (Exhibit 11F). Yet, Dr. Berger's own mental status evaluations show at best mild to perhaps moderate findings. A mental status evaluation on March 12, 2020 found the claimant well behaved and cooperative. His speech was clear, fluent and spontaneous. His thought processes demonstrate coherence and logic. His memory is intact and his attention span and concentration are normal. His judgment and insight are intact (Exhibit 10F/4). Furthermore, while he has undergone ECT treatments and a variety of medications, his treatment has generally been limited to outpatient medication management by Dr. Berger's office (Exhibit 10F). Most compelling here is the fact that Dr. Berger's own notes don't seem to support the very significant findings in this mental capacity assessment.

(Admin. Tr. 26; Doc. 15-2, p. 27).

Solomon argues that substantial evidence does not the ALJ's RFC assessment, and conclusion that Solomon is not disabled, because the ALJ did not adequately explain or support his rationale for finding Dr. Berger's opinion "unpersuasive."

Solomon alleges that the ALJ improperly evaluated the opinion of Dr. Berger because the ALJ did not state to what extent he found Dr. Berger's opinions persuasive and, though the ALJ appears to have rejected Dr. Berger's opinions, the ALJ relies only upon "benign mental status findings." (Doc. 20, pp. 4-14). Solomon argues that the ALJ's reliance on benign mental status findings is not permitted by the Third Circuit Court of Appeals, which "has expressly 'admonished ALJs who have used such reasoning, noting the distinction between a doctor's notes for purposes of treatment and that doctor's ultimate opinion on the claimant's ability to work.'" (Doc. 20, p. 10).[40]

In response, the Commissioner contends that the ALJ adequately explained his evaluation of Dr. Berger's opinions and properly relied upon "Dr. Berger's own clinical findings" in rejecting Dr. Berger's opinion. (Doc. 21, pp. 16).

Solomon responds:

> Plaintiff's level of cooperation with treatment or [] intact memory does little, if anything to demonstrate inconsistency with Dr. Berger's opined limitations. Rather, a longitudinal look at Plaintiff's treatment history reveals lack of improvement with medications (T 1253), a history of overdose (T 1253), electroconvulsive therapy (T 319-1126), and treatment resistant depression despite numerous medications (T 1253). This is why the ALJ's overreliance on seemingly benign mental status examination findings misses the mark . . . .

---

[40] Citing *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 356 (3d Cir. 2008) (citing *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000)).

(Doc. 22, p. 2).

The applicable regulations require the ALJ to "articulate in [the ALJ's] determination or decision how persuasive [the ALJ] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record."[41] The applicable regulations also require the ALJ to explain how he considered the "supportability" and "consistency" of a medical source's opinion.[42] Here, the ALJ evaluated the consistency of Dr. Berger's opinions with the other medical evidence by comparing Dr. Berger's opinions with Dr. Berger's evaluations of Solomon's mental status during one session and by comparing Dr. Berger's opinions with Solomon's course of treatment, including outpatient medication management and ECT treatments. (Admin. Tr. 26; Doc. 15-2, p. 27). Specifically, the ALJ chose one meeting between Solomon and Dr. Berger and relied upon Dr. Berger's mental status findings about Solomon on that day. However, the ALJ did not discuss the importance of earlier mental status examinations in his rejection of Dr. Berger's opinion, including a mental status examination which the ALJ previously referenced as "essentially within normal limits." Admin. Tr. 24; Doc. 15-2, p. 25). During this previous mental status examination, the ALJ reported that Solomon's mood and affect were "cooperative, depressed and sad[, and that Solomon] display[ed]

---

[41] 20 C.F.R. § 404.1520c(b).
[42] 20 C.F.R. § 404.1520c(b)(2).

depression . . . and [a] subdued mood consistently during [the] encounter" with a "constricted" affect. (Admin. Tr. 1312; Doc. 15-9, p. 446). Therefore, although some mental status findings appear "normal," other mental status findings are not "normal." The ALJ also cites to the types of treatment Solomon received when discrediting the medical opinions of Dr. Berger, but even in the ALJ's discussion of Solomon's medication regime, the ALJ must acknowledge that Solomon underwent eight ECT treatments, which are a type of treatment for medication-resistant depression performed under anesthesia. (Admin. Tr. 26; Doc. 15-2, p. 27). Perhaps this evidence would constitute substantial evidence on which to reject a medical opinion if paired with other strong evidence which tends to contradict the medical opinion, but the ALJ has provided no other evidence here. The ALJ did not even evaluate the supportability of Dr. Berger's opinions—that is, Dr. Berger's supporting explanations. Dr. Berger provided the following supporting explanations:

> Pt. [illegible] depression + anxiety, poor concentration + focus, easily overwhelmed & stressors, difficulty sustaining activity, difficulty sustaining attention, Indecisiveness . . . . poor energy & motivation, . . . pt would have difficulty presenting & consistency . . . . Pt. [illegible] some difficulty spontaneously composing self. Pt. [illegible] indecisiveness & difficulty adapting to change . . . . withdrawn + [illegible] behavior . . . .

(Admin. Tr. at 1546-48; Doc. 15-10, pp. 18-20). Although these explanations may or may not impact the persuasiveness of Dr. Berger's opinions on remand, we cannot here determine whether the ALJ considered Dr. Berger's explanations nor whether

such explanations would have affected the ALJ's finding of persuasiveness had the ALJ considered them.

We also find the ALJ's rejection of Dr. Berger's opinions concerning because the ALJ does not properly explain his analysis of *any* other medical opinions of record. The ALJ's decision on its face does not explain the ALJ's analysis of the supportability or consistency of any of the other medical opinions. Because the ALJ has not properly analyzed—or at least has not properly discussed his analysis of—*any* medical opinion in the record, we are unable to determine whether the ALJ's RFC determination is supported by substantial evidence.

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner will be vacated and the case remanded for further proceedings consistent with this memorandum opinion. An appropriate order follows.

Date: March 28, 2023                    BY THE COURT

                                        *s/William I. Arbuckle*
                                        William I. Arbuckle
                                        U.S. Magistrate Judge